IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID FRIEMAN,<br><br>   Plaintiff,<br><br>  v.<br><br>PATTERN ENERGY GROUP, INC., ALAN BATKIN, JOHN BROWNE, MICHAEL GARLAND, RICHARD GOODMAN, DOUGLAS HALL, PATRICIA NEWSON, and MONA SUTPHEN,<br><br>   Defendants. | CASE NO.:<br><br>COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |

Plaintiff David Frieman ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of Pattern Energy Group, Inc. ("Pattern" or the "Company") brings this action against the members of Pattern's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to the Canada Pension Plan Investment Board ("CPPIB").

2. On November 4, 2019, the Company announced that it had entered into a definitive agreement and plan of merger ("Merger Agreement"), by which the Company will be acquired by CPPIB (the "Proposed Transaction"). Under the terms of the Merger Agreement, Pattern

stockholders will receive $26.75 in cash in exchange for each share of Pattern common stock (the "Merger Consideration").

3.  On December 13, 2019, the Company filed a Preliminary Proxy Statement on Form PREM14A (the "Proxy") with the United States Securities & Exchange Commission. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the Company's financial projections, the financial analysis performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore"), whether the confidentiality agreements entered into with potential acquirors prevent those parties from submitting proposals superior to the Proposed Transaction, and the employment negotiations between CPPIB and Pattern's management team.

4.  Without additional information the Proxy is materially misleading in violation of federal securities laws.

5.  By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6.  The stockholder vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

7.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders

of Pattern common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the Nasdaq Stock Exchange within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

## PARTIES AND RELEVANT NON-PARTIES

11. Plaintiff is, and has been at all relevant times, the owner of Pattern common stock.

12. Defendant Pattern is a corporation organized and existing under the laws of Delaware. It maintains principal executive offices at 1088 Sansome Street, San Francisco, California 94111. Pattern is a vertically-integrated renewable energy company with a n operating portfolio of renewable energy power projects and a separate, development investment segment. Pattern common stock is listed for trading on the Nasdaq and the Toronto Stock Exchange under the ticker symbol "PEGI."

13. Defendant Alan Batkin ("Batkin") has served as a director of the Company and Chairman of the Board since October 2013.

14. Defendant John Browne ("Browne") has served as a director of the Company since October 2013.

15. Defendant Michael M. Garland ("Garland") has served as the Chief Executive Officer ("CEO") and as a director of the Company since October 2012.

16. Defendant Richard A. Goodman ("Goodman") has served as a director of the Company since December 2018.

17. Defendant Douglas G. Hall ("Hall") has served as a director of the Company since October 2013.

18. Defendant Patricia M. Newson ("Newson") has served as a director of the Company since October 2013.

19. Defendant Mona K. Sutphen ("Sutphen") has served as a director of the Company since December 2018.

20. Defendants referenced in ¶¶ 13 through 19 are collectively referred to as Individual Defendants and/or the Board.

**FURTHER SUBSTANTIVE ALLEGATIONS**

21. On November 4, 2019, Pattern Energy issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> SAN FRANCISCO and TORONTO and NEW YORK, Nov. 4, 2019 /PRNewswire/ -- Pattern Energy Group Inc. (Nasdaq and TSX: PEGI) ("Pattern Energy" or "the Company") and Canada Pension Plan Investment Board ("CPPIB") today announced they have entered into a definitive agreement, pursuant to which CPPIB will acquire Pattern Energy in an all-cash transaction for $26.75 per share, implying an enterprise value of approximately $6.1 billion, including net debt.

CPPIB and Riverstone Holdings LLC ("Riverstone") have concurrently entered into an agreement pursuant to which, at or following the completion of the proposed acquisition of Pattern Energy by CPPIB, CPPIB and Riverstone will combine Pattern Energy and Pattern Energy Group Holdings 2 LP ("Pattern Development") under common ownership, bringing together the operating assets of Pattern Energy with the world class development projects and capabilities of Pattern Development.

Under the terms of the merger agreement, Pattern Energy shareholders will receive $26.75 in cash consideration for each share of Pattern Energy, representing a premium of approximately 14.8% to Pattern Energy's closing share price on August 9, 2019, the last trading day prior to market rumors regarding a potential acquisition of the Company. The consideration also represents a 15.1% premium to the 30-day volume weighted average price prior to that date.

The Pattern Energy management team, led by Mike Garland, will lead the combined enterprise.

"This agreement with CPPIB and Riverstone provides certain and significant value for Pattern Energy shareholders with an all cash transaction at a very attractive stock price," said Mike Garland, CEO of Pattern Energy. "Over the years, Pattern Energy has been able to provide shareholders with a consistent dividend and now our shareholders can realize the value embedded in the Company. We believe the proposed transaction reflects the strength of the platform we have built."

"In reaching this transaction, the Pattern Energy Board of Directors undertook a robust process that we believe culminated in a transaction that delivers value to shareholders," said Alan Batkin, Chairman of the Pattern Energy Board of Directors. "As part of this process, the Board formed a special committee, composed of independent directors that directed the process at all times, and retained independent legal and financial advisors to assist our review of the transaction and provide a fairness opinion. The special committee reviewed multiple bids as part of a thorough process that involved multiple parties and evaluated the transaction against the Company's standalone prospects, performance and outlook relative to historic trading multiples and yields. Based on this review and in light of the transaction structure, the special committee unanimously determined that this transaction is in the best interest of the Company's shareholders and recommended it to the full Pattern Energy Board, which also determined that this transaction is advisable and in the best interests of the Company's shareholders. The transaction delivers significant, immediate and certain value to the Company's shareholders."

"Pattern Energy is one of the most experienced renewables developers in North America and Japan with a high-quality, diversified portfolio of contracted

operating assets, aligning well with CPPIB's renewable energy investment strategy and the increasing global demand for low-carbon energy," said Bruce Hogg, Managing Director, Head of Power and Renewables, CPPIB. "The Pattern Energy management team has a proven track record of identifying and executing development strategies with differentiated competitive advantages. We look forward to working with Pattern Energy and Riverstone to grow the company."

"We have long been believers in Pattern Energy and have had a successful partnership with the Company since we first invested in it more than 10 years ago," said Chris Hunt and Alfredo Marti, Partners at Riverstone. "We have worked closely with Mike and the Pattern Energy team to grow the Company from a development startup into a multinational operator and supplier of low cost, renewably sourced energy. We are confident the team will continue to develop world-class wind and solar assets, which will be an important part of our transition to cleaner forms of power generation. We look forward to continuing to support them in driving the Company's next phase of development."

Transaction Details

The transaction is expected to close by the second quarter of 2020, subject to Pattern Energy shareholder approval, receipt of the required regulatory approvals, and other customary closing conditions. The Pattern Energy transaction is not contingent upon the completion of the Pattern Development transaction.

Upon the completion of the transaction, Pattern Energy will become a privately held company and shares of Pattern Energy's common stock will no longer be listed on any public market. Pattern Energy will continue paying its quarterly dividend through the transaction close.

Advisors

Evercore and Goldman, Sachs & Co. LLC are acting as independent financial advisors to Pattern Energy's special committee, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as independent legal counsel to the special committee.

**The Proxy Misleads Pattern Stockholders by Omitting Material Information**

22.     On December 13, 2019, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince Pattern's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information

concerning the Company's financial projections, Evercore's financial analyses, the terms of confidentiality agreements entered into with potential acquirers before the signing of the Merger Agreement, and the negotiations and communications between Company management and CPPIB prior to the signing of the Merger Agreement.

### *The Proxy Fails to Disclose Material Portions of the Financial Projections Relied Upon by the Board and Its Financial Advisors*

23. The summary of the financial analyses conducted by the Company's financial advisor, Evercore, states that the advisor "reviewed certain non-public internal projected financial statements and other non-public financial and operating data relating to Pattern prepared and furnished to Evercore by management of Pattern, as approved for Evercore's use by Pattern" in preparing its financial analyses.

24. Thus, the cash flow projections that formed the basis for these analyses were management's best estimates of the Company's future results, and did not originate from some other source.

25. First, the Proxy states that these projections were created for the years 2019 through 2027, and that Evercore used the projections for these years in conducting its analysis. The Proxy only discloses the projections for the years 2019 through 2023. The omission of half of the forecasts, including the key final years that contribute to the terminal projections, materially mislead Pattern's stockholders regarding both the Company's future cash flows and Evercore's financial analyses.

26. Second, the Proxy omits the actual line-item used by Evercore in its *Discounted Cash Flow Analysis*: the Company's standalone, levered, after-tax free cash flows, defined as "after-tax project distributions, less corporate general and administrative expense, less corporate interest expense, less asset acquisitions, less proceeds and investments in Gulf Repower project

7

plus cash proceeds from divestitures, plus refinancing proceeds, plus cash proceeds from Nigig loan repayment, plus long-term debt proceeds, less long-term debt paydown, less changes in revolver issuances and paydown.". Instead, the Proxy discloses a non-analogous figure, "After-Tax Equity Cash Flo," defined as "Project Distributions, less corporate general and administrative costs, less corporate interest cost, less acquisition expense, less debt repayments, plus asset divestiture proceeds, plus new debt issuance, plus Pattern Development Distributions." This omission materially misleads stockholders as to the actual value of the Company's cashflows and obfuscates the inputs used by Evercore in arriving at an opinion as to the fairness of the Proposed Transaction.

27.    The above-referenced omitted information relating to the Company's financial projections significantly altered the total mix of information available to Pattern's stockholders regarding the future value of the Company.

28.    Thus, the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by Evercore, or to perform their own valuation of the Company.

*Material Omissions Concerning the Financial Analyses of Evercore*

29.    The Proxy describes the financial analyses performed by Evercore. However, the description of these analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Pattern's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions of Evercore in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Pattern stockholders.

30.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the Company's standalone, levered, after-tax free cash flows; (ii) inputs from the management forecasts after the year 2023; (iii) the terminal values for Pattern; (iv) Evercore's assumptions behind applying a perpetuity growth rate of (1.00)% to 1.00%; and (v) Evercore's inputs and assumptions behind applying a discount rate of 7.5% to 9.5% for Pattern (excluding its subsidiary) and 12.5% to 17.5% for its subsidiary.

31.     With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy omits: (i) the individual multiples observed for each company's cash available for distribution ("CAFD"); (ii) Evercore's basis to apply a dividend yield of 7.25% to 6.25%; and (iii) the individual dividend yield for each company's 2020E EBITDA and the multiples observed.

32.     With respect to Evercore's *Selected Transaction Analysis*, the Proxy omits the individual multiples for each of the observed transactions.

### *Material Omissions Concerning the Possibility of Superior Proposals*

33.     The Proxy misleads Pattern stockholders with respect to the confidentiality agreements entered into with multiple potential acquiring parties. While the Proxy states that these confidentiality agreements contained "customary" standstill provisions, it does not disclose whether these standstill provisions prohibited those potential acquirers from privately requesting a waiver of the standstill from the Board in order to make an unsolicited proposal to acquire the company. These types of standstill provisions are so-called "don't-ask-don't-waive" ("DADW") provisions.

34.     A DADW provision prevents a party from approaching the Company's Board privately to request a waiver of the standstill provision in order to submit a superior proposal. Through the use of these DADW provisions, a Board may willfully blind itself to superior offers.

35. While the existence of standstill provisions is disclosed, the Proxy omits the information that would currently be most important: whether the provisions are still in effect or DADW provisions.

36. Instead, the Proxy states that Defendants were permitted to waive, terminate, modify or release those potential acquirors during the go-shop period that followed the signing of the Merger Agreement. But Pattern's stockholders have no way of knowing whether the standstill provisions prevented the potential acquirers from requesting such a waiver, thus preventing them from submitting a superior proposal to the Proposed Transaction.

37. Such information is material to Pattern stockholders as a reasonable Pattern stockholder would find it material and important to their voting decision whether parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

### *Material Omissions Regarding the Continued Employment of Company Management*

38. The Proxy fails to disclose any negotiations or communications regarding the future employment of the members of Pattern's management, as well as the details of any employment related discussions and negotiations that occurred between CPPIB and Pattern executive officers, including who participated in all such communications, when they occurred, and their content. The Proxy further fails to disclose whether any of CPPIB's prior proposals or indications of interest addressed the prospect of management retention.

39. The press release specifically states that "The Pattern Energy management team, led by Mike Garland, will lead the combined enterprise." Naturally, the Pattern leadership team would prefer, and therefore prioritize, a transaction with a buyer who would continue to employ them over any transaction in which they would no longer enjoy a salary.

40. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

41. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Pattern**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Pattern is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed

Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Pattern within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Pattern and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 8, 2020

Respectfully submitted,

By: /s/ *Adam M. Apton*
Adam M. Apton (AS8383)
**LEVI & KORSINSKY, LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4859
Fax: (212) 333-2121
Email: aapton@zlk.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: denright@zlk.com
        etripodi@zlk.com

*Attorneys for Plaintiff*